RPM, Appellant (Respondent),

v.

STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES, DIVISION OF PUBLIC ASSISTANCE AND SOCIAL SERVICES; and State of Wyoming, ex rel., RPB, minor child, Appellees (Petitioners).

No. C–95–8.

Supreme Court of Wyoming.

May 21, 1996.

RPM, pro se.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Cynthia L. Harnett, Assistant Attorney General, Cheyenne, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY and LEHMAN, JJ., and PRICE, District Judge.

GOLDEN, Chief Justice.

We review appellant RPM's contention that the district court erred in determining, in this paternity action, RPM's liability for past and future child support without RPM having been afforded a meaningful opportunity to be heard.

We reverse and remand.

RPM raises these issues:

I. Whether the district court violated the Fifth and Fourteenth Amendments of the United States Constitution and Article 1 § 6 of the Constitution of the State of Wyoming in denying the Appellant an opportunity to be heard?

II. Whether the district court erred (abused its discretion) in refusing to consider Appellant's motion in request for court intervention or assistance, and refusing to consider Appellant's motion for relief from judgment, or in the alternative, notice of appeal?

Appellee, the Department of Family Services (Department), rephrases the issues, thus:

I. Whether Appellant has provided cogent argument and pertinent authority on any issue?

II. Whether Appellant was entitled to additional rights beyond those afforded by Wyoming paternity statutes?

III. Whether the district court provided appropriate disposition of each of Appellant's motions?

On February 17, 1995, the Department filed a petition to establish paternity and provide for child support, alleging that RPM was the father of the child RPB and that RPM had failed to provide financial support for the child. RPM was incarcerated in the Wyoming State Penitentiary at the time the petition was served. RPM filed his answer to the petition on March 1, 1995, and admitted that he was the father of RPB and that the child had received public assistance.[1] RPM claimed he was indigent,[2] thus representing himself in this matter. The mother of the child also answered, admitting all of the allegations of the petition.

By notice entered of record on March 24, 1995, the matter was set for hearing. By motion filed on April 5, 1995, RPM asked the trial court:

> [RPM] is an inmate presently incarcerated in the Wyoming State Penitentiary * * *. Due to this incarceration, and due to his poverty, [RPM] is unable to make arrangements to personally appear and is not represented by counsel. [RPM] respectfully moves this Court to intervene and assist in making the necessary arrangements for this respondent to either appear in person, or by telephone conference.

By letter filed with the district court on May 4, 1995, RPM asked for information pertaining to the paternity matter.

By order entered on May 8, 1995, the district court found RPM to be the father of RPB and ordered RPM to pay $665.00 in attorney's fees and court costs and $11,547.00 for accrued child support (May 1987 through April 1995). The district court also found that RPM had imputed earnings of $600.00 per month (and that the child's mother also had that same amount of earnings[3]) and established RPM's obligation to pay current child support at $150.00 per month.

■ In *Murray v. Murray,* 894 P.2d 607, 608 (Wyo.1995), we held that:

> The Constitution of the United States and the Constitution of the State of Wyoming each provide that no person shall be deprived of life, liberty or *property* without due process of law. U.S. Const. amend. XIV, § 1; Wyo. Const. art. 1, § 6. " 'It is basic that, *before* a property interest can be terminated, except in emergency situations, due process must be afforded to litigants in the form of notice and a *meaningful* opportunity to be heard.' " *Sandstrom v. Sandstrom,* 880 P.2d 103, 106 (Wyo.1994) (*quoting Lawrence–Allison and Associates West, Inc. v. Archer,* 767 P.2d 989, 997 (Wyo.1989)) (emphasis in original). It would have been a simple matter to allow Peter to participate in the divorce hearing via conference call. Peter, however, was denied his day in court.

We repeated that finding in a different, but not distinguishable, context in *Wolfe v. Wolfe,* 899 P.2d 46, 47–48 (Wyo.1995) (it is abuse of discretion for trial court to modify visitation provisions of divorce decree without affording incarcerated father an opportunity to be heard or otherwise providing for development of an evidentiary record). We note here that in *Glenn v. Glenn,* 848 P.2d 819 (Wyo.1993), we affirmed an order modifying the child support obligation of an individual who had been sentenced to life in the penitentiary. The opportunity to be heard was not at issue in that case because the appellant was allowed to participate by telephone conference call.[4] Also *see Throndset v. Hawkenson,* 532 N.W.2d 394, 397 (N.D.1995), and *In Interest of F. H.,* 283 N.W.2d 202, 209 (N.D.1979) (prison inmate's right to appear

---

1. RPM denied portions of the complaint, asserting that he had made attempts to provide for the support of the child and that he would be obligated to provide support after he had been granted parental rights to the child, but not for support prior to receiving those rights.

2. RPM admitted he received income of $55.00 per month and that "an agreeable amount of [child] support can be made" and he would agree to notify the court of any changes in his address or earnings.

3. These earning amounts were based on the ability of RPM and the mother to secure full-time, minimum wage employment.

4. The use of the telephone conference call is not mentioned in the opinion. However, the order of the district court from which the appeal was taken, and which appears in the Court's file of the *Glenn* case, acknowledges that Glenn appeared by telephone conference call.

satisfied by appearance through counsel or by deposition); *Barnes v. Fucci*, 563 So.2d 175, 176 (Fla.App. 4 Dist.1990) (imprisoned mother entitled to appear for termination of parental rights hearing); *Smith v. Alaska Department of Revenue*, 790 P.2d 1352, 1353 (Alaska 1990) (no right for prisoner to be heard where there are only legal issues, but no factual dispute); *Whitney v. Buckner*, 107 Wash.2d 861, 734 P.2d 485, 488 (1987) (prisoners must be afforded a meaningful opportunity to prosecute their domestic relations actions); *Clemans v. Collins*, 679 P.2d 1041, 1042 (Alaska 1984) (hearing required to determine indigent prisoner's ability to pay child support while incarcerated).

■ We reverse [5] because the district court failed to accommodate some sort of appearance for RPM. Hand-in-hand with the district court's failure to afford RPM a meaningful opportunity to be heard, we note that the record does not support the district court's findings with respect to child support; indeed, to the extent there is relevant information in the record, it contradicts the district court's findings.

We affirm that portion of the district court's order which determined that RPM is the father of RPB because RPM admitted his paternity. The remaining portions of the order are reversed and this matter is remanded to the district court for further proceedings consistent with this opinion.

PRICE, District Judge, concurring in result only.

I concur with the result in this decision but do not join in the majority's opinion because of the Court's failure to give guidance to the district court on handling this situation. Also, the opinion should give warning to *pro se* litigants that they should not just sit back on the date their case has been set for trial or for hearing.

It should be noted that RPM's "motion" filed on April 5, 1995, was entitled "Motion in Request for Court Intervention or Assistance." The motion also acknowledged the date and time of the hearing. Not only did RPM not attempt to participate by phone on the hearing date, he did nothing to require a hearing on his motion. The Wyoming Rules of Civil Procedure do not specifically address this issue. However, Wyo. R. Civ. P. 6(c)(2) references "a request for hearing ... by the moving party or any party affected by the motion...." Also, RPM did not make a specific motion or request to appear by phone as is allowed under Wyo. U.R.D.C. 802. In 1984, this Court said that a *pro se* litigant would not be granted greater rights than any other litigant and he must expect the same treatment as if represented by an attorney. It was pointed out that even though a person has a right to act as their own attorney, they should be restricted to the same rules. To do differently is to unjustly reward ignorance. *Matter of GP*, 679 P.2d 976, 984 (Wyo.1984). More recent cases have been somewhat softer on the *pro se* litigant by indicating that some leniency should be accorded; "however, the administration of justice requires reasonable adherence to procedural rules and requirements of the court." *Osborn v. Emporium Videos*, 848 P.2d 237, 240 (Wyo.1993).

My direction to trial courts faced with this situation would be to require all notices of setting to state that appearance by phone will be considered by the court upon request and that if granted, the person attending by phone should be given the proper phone number to call and the cost paid by the person attending by phone.

In summary, I vote to reverse in part as announced in the majority decision. I agree that a litigant should have a right to attend a hearing by phone if he is unable to make arrangements for in-person attendance because he is in jail; however, I think the incarcerated person must make the request and then set up the phone call themselves, including arrangements for payment of the call. It should not be up to the court to provide attendance and set up the call.

5. RPM's brief contained cogent argument and pertinent authority.