**Juanita Michelle CREWS, Appellant**

v.

**Gail SHOFNER, Appellee.**

No. 2013–CA–001268–ME.

Court of Appeals of Kentucky.

March 7, 2014.

Cynthia T. Griffin, Elizabethtown, KY, for Appellant.

Samuel Todd Spalding, Lebanon, KY, for Appellee.

Before LAMBERT, STUMBO and THOMPSON, JUDGES.

## OPINION

STUMBO, Judge:

Juanita Michelle Crews appeals from a Default Judgment rendered in Taylor Circuit Court in an action filed by Gail Shofner seeking custody of Crews' minor children. Crews argues that the circuit court committed reversible error by establishing or modifying custody without conducting a hearing, and that it improperly failed to conclude that Shofner did not have standing to prosecute the action. We conclude that child custody may be established or modified only after conducting a hearing and adhering to the statutory scheme, even when the Petitioner is otherwise entitled to a Default Judgment. Accordingly, we Reverse and Remand the matter for further proceedings.

Juanita Michelle Crews and Justin Daniel Begley are the biological parents of two minor children. On December 18, 2012, the Taylor Circuit Court rendered a Time-Sharing Modification Order adjudging the parents to be joint custodians of the children, with residential custody alternating on a weekly basis. The Order acknowledged that the parties had a history of drug and alcohol abuse, but found that it did not endanger the children. The court went on to find that both parties "have a solid source of family support and assistance to help them with the care of the children." The Order stated that the joint custodial arrangement was in the children's best interest.

Gail Shofner is Begley's mother and paternal grandmother of the two children. On May 20, 2013, she filed a Verified Petition for Custody in Taylor Circuit Court seeking an Order granting her custody of the children. As a basis for the Petition, Shofner alleged that both parents had extensive histories of criminal activity and drug abuse, that they had lived at several different residences during the children's lives and that Shofner "has basically raised the minor children and has been their primary caregiver." Shofner also alleged that Crews and Begley became angry with her when she refused to return the children on one occasion, and filed a frivolous warrant against her for custodial interference. Shofner went on to allege that Crews and Begley were not capable of providing for the physical, emotional, financial, psychological and educational needs of the children; that they were unfit to provide care and control of the children; and, that it was in the children's best interest to establish Shofner as the sole custodian.

Begley and Crews were served with the Petition on May 22, 2013, and May 23, 2013, respectively. Neither party filed responsive pleadings or otherwise defended the action within twenty days. Shofner then filed a Motion for Default Judgment. On June 20, 2013, the Taylor Circuit Court sustained the motion and rendered a Default Judgment awarding Shofner sole custody of the two minor children. This appeal followed.

■ Crews now argues that the Taylor Circuit Court committed reversible error in sustaining Shofner's Verified Petition for Custody and Motion for Default Judgment. She contends that custody may be established or modified only within the statutory scheme, and that no modification may occur absent a hearing and proof of the statutory elements. Crews notes she lost custody of her children without a hearing and without any proof whatsoever being presented in support of Shofner's Peti-

tion. Rather, custody was established or modified solely on procedural grounds because Crews failed to file a responsive pleading within twenty days. Crews argues that mere allegations contained in a Petition and supportive affidavit are grossly insufficient to satisfy the statutory elements for custody modification, especially since the same allegations had already been reviewed and expressly acknowledged by the court some six months earlier when the court concluded that "[t]here is no evidence that this has, to this point, endangered the children." In sum, Crews argues that the statutory scheme for custody modification must be followed, that custody may not be modified on mere procedural grounds, and that the Taylor Circuit Court erred in failing to so rule.

In response, Shofner characterizes the issue before us as purely one of procedure and application of the Civil Rules. She maintains that the sole issue is whether the circuit court may properly render a Default Judgment when a Respondent fails to tender a responsive pleading within twenty days of the Petition. According to Shofner, the Verified Petition for Custody was not a Motion to Modify Custody, but a wholly separate action before a new circuit judge. Shofner notes that she was not a party to the proceeding that resulted in the original custody decree, and contends that the instant action is not a proceeding to modify custody but a separate and distinct action which-like all proceedings-is subject to the Kentucky Rules of Civil Procedure. As such, Shofner asserts that the circuit court was well within its authority to render a Default Judgment arising

from Crews' failure to file a responsive pleading or otherwise participate in the action. Accordingly, she seeks an Opinion sustaining the Default Judgment and resultant change in custody.

It is uncontroverted that a Time–Sharing Modification Order was rendered by the Taylor Circuit Court on December 18, 2012. That Order adjudicated the custody rights of Crews and Begley as to their two minor children, and had not been modified as of the time that Shofner filer her Verified Petition for Custody. Shofner strongly argues that her Petition should not be characterized as a Motion to Modify that Order, because she was not a party to the action from which it resulted, and because the instant Petition was adjudicated before a different circuit judge. If Shofner's Petition is not properly characterized as a Motion to Modify Custody pursuant to Kentucky Revised Statutes (KRS) 403.340, it must then fall within the scope of KRS 403.270 ("Custodial issues; best interests of child shall determine; joint custody permitted; de facto custodian").[1] That statute provides that,

(2) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;

(b) The wishes of the child as to his custodian;

---

1. Shofner's characterization of her Petition as a primary custody proceeding under KRS 403.270, rather than a custody modification under KRS 403.340, is bolstered by *Evans v. Evans, infra.* In *Evans,* the grandparents sought visitation or custody of children whose parents were subject to a prior custody order.

In adjudicating that Petition, a panel of this Court characterized the grandparents' claim as a new action rather than one seeking modification of the prior custody order. And, like the grandparents in *Evans,* Shofner was not a party to the prior custody proceedings.

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720;

(g) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(h) The intent of the parent or parents in placing the child with a de facto custodian; and

(i) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school.

Additionally, KRS 403.270(1) provides that custody may be granted to a parent or a de facto custodian, defined as

a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older[.]

It is noteworthy that the Legislature repeatedly employed mandatory "shall" language as it relates to establishing custo- dy. "In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command and ... must be given a compulsory meaning." *Black's Law Dictionary* 1233 (5th ed.1979). The Kentucky Supreme Court has succinctly noted that, "[s]hall means shall." *Vandertoll v. Commonwealth,* 110 S.W.3d 789, 796 (Ky.2003). As it relates to child custody, and based on the entirety of KRS Chapter 403, we conclude that the Legislature's usage of mandatory language evinces a strong public policy in favor of protecting the child's best interest in custody matters.

There is a paucity of Kentucky case law on the issue of custody resolution arising in the context of a Default Judgment. On one hand, it is clear that the child's best interest is paramount in custody matters, as evinced in KRS 403.270 and the supportive case law. On the other hand, equitable principles are foundational in the Civil Rules, which provide parties with the opportunity to be heard while promoting judicial economy and the speedy resolution of claims. "The purpose of our civil rules is to provide a one form of action system in which litigants who are properly joined are afforded means of settling entire controversies with minimum of expense and procedural steps." *Licking River Limestone Co. v. Helton,* 413 S.W.2d 61, 63–64 (Ky. 1967). Moreover, "[t]he Civil Rules prescribe a practical pattern for the conduct of litigation and the effective administration of justice. To this end reasonable compliance is necessary." *Naive v. Jones,* 353 S.W.2d 365, 367 (Ky.1961). The matter at bar places these public policy issues at odds.

In 2008, a panel of this Court noted the lack of case law addressing custody resolution arising in the context of a Default Judgment. In *Evans v. Evans,* 2008 WL 2468885 (Ky.App.2008)(2007–CA–001728), paternal Grandparents filed a petition

seeking custody or visitation of their grandchildren.[2] When the biological Mother failed to file responsive pleadings or otherwise participate in the proceeding, the circuit court conducted an evidentiary hearing in her absence. After proof was adduced, the court held as follows:

> There are reasonable grounds to believe the Respondents are unable or unwilling to protect the children, that the children are in danger in the custody of Respondents, that Respondents have inflicted or allowed to be inflicted by other than accidental means emotional injury on the children, that the children are in immediate danger due to Respondents' failure or refusal to provide for the safety or needs of the children, that Respondents have abused illegal drugs in the presence of the children, and that Respondents have failed to properly care for the children.

*Evans*, 2008 WL 2468885 at *3.

The court then noted Mother's failure to participate in the action, and rendered a Default Judgment in favor of the Grandparents. Mother then filed a Motion to Alter, Amend or Vacate pursuant to CR 59.05 and to place the matter back on the active docket. A hearing on the motion was conducted, whereupon Mother's attorney candidly acknowledged that Mother's failure to participate was due to counsel's negligence in failing to place the matter on his calendar. Mother's motion was denied, and the matter was appealed to a panel of this Court. That panel later stated that,

> We have studied this case carefully and are aware of the public policy concerns underlying [Mother] Amber's due process rights to her children as well as the best interests of these children. Our ultimate concern is—and must be— the best interests of the children. We

cannot conclude that the trial court abused its sound discretion in refusing to set aside the judgment awarding custody to the grandparents in this case.

*Evans* at *6.

The panel's conclusion was grounded in large part on two factors. First, the trial court conducted an evidentiary hearing to examine the children's best interest in the context of KRS 403.270. That is to say, the Legislature's mandatory "shall" language was given effect. Second, the court examined extra-jurisdictional case law for guidance on the underlying public policy issues and the tension between the child's best interest and procedural due process.

In examining the extra-jurisdictional case law, the panel stated,

> As this is a case of first impression in Kentucky, we have researched this issue among many of our sister states for guidance. Many other jurisdictions have discussed default judgments in the custody context and have held that strict application of its provisions may not necessarily serve the best interests of a child and that, therefore, those provisions should be less rigorously applied. *See, e.g., Dozier v. Dozier*, 222 S.W.3d 308, 311 (Mo.Ct.App.2007); *Patricia J. v. Lionel S.*, 203 A.D.2d 979, 611 N.Y.S.2d 374, 375 (N.Y.App.Div.1994); *Esquibel v. Esquibel*, 917 P.2d 1150, 1152 (Wyo.1996). This relaxation of standards has occurred when a party alleged to have been in default did not willfully neglect or intentionally ignore the custody proceedings. *See Esquibel*, 917 P.2d at 1152; *Lantz v. Bowman*, 881 P.2d 1079, 1081–82 (Wyo.1994).

> Most jurisdictions have expressed a strong preference against use of default judgments in custody matters but do not

---

**2.** This case is cited pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c).

go so far as to bar them. For example, Missouri courts have held:

Because the adversarial process better protects the child's interests in a custody proceeding, default judgments in custody cases are strongly disfavored and **a refusal to set aside such a judgment is reviewed with heightened scrutiny.** (Emphasis added.)

*Cutter–Ascoli v. Ascoli,* 32 S.W.3d 167, 169 (Mo.Ct.App.2000); *see also Dozier,* 222 S.W.3d at 311–12. Alabama courts have similarly held that there is a "strong bias" in favor of deciding cases on the merits when they involve issues of child custody. *See Buster v. Buster,* 946 So.2d 474, 478 (Ala.Civ.App.2006) (plurality opinion); *Sumlin v. Sumlin,* 931 So.2d 40, 44 (Ala.Civ.App.2005).

Florida appears to represent the extreme in wholly disfavoring utilization of default judgments in the context of child custody matters. It reasons that only one side giving testimony is insufficient to render a decision "that will truly be in the best interest of the child." *Webber v. Novelli,* 756 So.2d 164, 165 (Fla.Dist.Ct.App.2000); *see also Childers v. Riley,* 823 So.2d 246, 246–47 (Fla.Dist.Ct.App.2002); *Armstrong v. Panzarino,* 812 So.2d 512, 514 (Fla.Dist.Ct.App.2002).

*Evans* at *4–5.

■ Having closely examined the extra-jurisdictional case law, as well as the public policy underlying the children's best interest in custody matters and the parties' right to be afforded means of settling entire controversies with minimum of expense and procedural steps, we adopt the majority view that 1) expresses a strong preference against use of Default Judgments in custody matters, and 2) holds as paramount above all other factors, including procedural considerations, the child's best interest in custody matters. There are narrow circumstances under which a Default Judgment may be rendered in a custody proceeding. Those circumstances are limited to those found in *Evans,* where a full hearing has been conducted to determine the child's best interest. As expressed in the majority view, however, we hold that a full hearing to determine the child's best interest and to adjudicate the other factors expressed in KRS 403.270 (and modification under KRS 403.340, where applicable) is a prerequisite to the entry of a Default Judgment. Under such an approach, the child is afforded the full right to have his or her best interest fairly and fully determined, the mandatory "shall" language promulgated by the Legislature in KRS Chapter 403 is given effect, and the matter is resolved in an efficient and timely manner despite the intransigence of the nonparticipating party.

■ In the matter at bar, no hearing was conducted to determine the veracity of Shofner's claims of poor parenting, the children's best interest nor the presence of any of the elements set out in KRS 403.270. We may not overturn a circuit court's decision to grant a Default Judgment absent a showing that the court abused its discretion. *PNC Bank, N.A. v. Citizens Bank of Northern Kentucky, Inc.,* 139 S.W.3d 527, 530 (Ky.App.2003). Having determined that a full evidentiary hearing is a necessary prerequisite to the entry of a Default Judgment in a custody proceeding, and as the matter below was adjudicated solely on the pleadings and without any determination of the children's best interest or the statutory elements, we conclude that the circuit court abused its discretion. While it may very well be determined on remand that children's best interest and the statutory factors compel a ruling in Shofner's favor, such a determination cannot be made absent an evidentiary hearing. Ultimately, we cannot

abide by the notion that parents-even those with a history of drug and alcohol abuse, criminal conduct and neglect-may lose custody of their children outside of the statutory scheme, and without a scintilla of evidence against them having been produced.

Crews also contends that Shofner failed to demonstrate that she was a de facto custodian pursuant to KRS 403.270(1), and thus does not have standing to prosecute a custody petition. Nonparents may attain standing to seek custody or visitation of a child only if they qualify as de facto custodians, if the parent has waived her superior right to custody, or if the parent is conclusively determined to be unfit. *Truman v. Lillard,* 404 S.W.3d 863 (Ky.App.2012). Crews has not waived her superior right to custody. On remand, the court shall determine if Shofner qualifies as a de facto custodian, or if Crews and Begley are conclusively found to be unfit. Without such a determination, Shofner does not have standing to proceed.

For the foregoing reasons, we Reverse the Default Judgment and Remand the matter for further proceedings consistent with this Opinion.

ALL CONCUR.